# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————————

№ 24-CV-05657 (RER)

————————————————

SAURABH TANEJA

VERSUS

DIRECTOR USCIS NSC LOREN K. MILLER,
SECRETARY ALEJANDRO MAYORKAS, AND UR MENDOZA JADDOU

————————————

**MEMORANDUM & ORDER**

————————————

**RAMÓN E. REYES, JR., District Judge:**

Saurabh Taneja petitioned the United States Citizenship and Immigration Services ("USCIS") for an extraordinary-ability visa, but USCIS denied his petition. He now challenges that denial, arguing it was arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. §§ 553, 701, *et seq.* He also attacks USCIS's method of adjudicating such visas, claiming its approach is outside of its statutory authority, contravenes its binding regulation, and relies on a policy memorandum that should be classified as a legislative rule. Both parties move for summary judgment.

After carefully reviewing the record, and for the reasons set forth herein, the Court GRANTS defendants' motion and DENIES plaintiff's motion.

# BACKGROUND[1]

I.    Statutory Background

The Immigration and Nationality Act ("INA") contains five preference categories for employment-based visas. 8 U.S.C. § 1153(b).  Noncitizens applying under the first category of "priority workers" may apply for an "extraordinary ability" visa.  8 U.S.C. § 1153(b)(1)(A). Such an application must demonstrate that the noncitizen:

(i)    has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,

(ii)    seeks to enter the United States to continue work in the area of extraordinary ability, and

(iii)    entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A)(i)–(iii).

To satisfy the first point, a noncitizen must provide initial evidence that they "sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3). The evidence must be of a "one-time achievement (that is, a major, international recognized award)." 8 C.F.R. § 204.5(h)(3); *see also Jafarov v. U. S. Citizenship and Immigr. Servs.,* No. 23 Civ. 3372

---

[1] The Court acknowledges and offers its deep gratitude to Maya Chrobot, a judicial intern and second year law student at Fordham School of Law, for her assistance in researching and drafting this memorandum and order.

(PAE), 2024 WL 69056, at *1 (S.D.N.Y. Jan. 2024). If the petitioner cannot do so, they must provide at least three of the following:

(i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3)(i)–(x).

3

USCIS proceeds to the second step in evaluating the application only if finds that the noncitizen proved the above criteria by a preponderance of the evidence. (*See* ECF No. 1-9 at 4; *see also* USCIS Policy Memorandum PM 602-0005.1, *Evaluation of Evidence Submitted with Certain Form 1-140 Petitions; Revisions to the* Adjudicator's Field Manual (AFM) *Chapter 22.2,* AFM *Update AD11-14* (Dec. 22, 2010)). The second step is a "final merits determination," in which USCIS evaluates the application in its entirety to determine if "the noncitizen, by a preponderance of the evidence, has demonstrated that he or she is "'one of that small percentage who have risen to the very top of the field of endeavor' and received 'sustained' national or international acclaim." *Jafarov*, 2024 WL 69056, at *2 (citation omitted).

The agency implemented this two-step policy after the Ninth Circuit's decision in *Kazarian v. U.S. Citizenship and Immigration Services*, 596 F.3d 1115 (2010). In an appeal from USCIS' denial of an extraordinary ability visa, the court held that the Administrative Appeals Office ("AAO") improperly evaluated the petitioner's evidence in support of his application. *Id.* The AAO had previously determined that the petitioner did not meet his burden of proof for at least three of the ten 8 C.F.R. § 204.5(h)(3) factors because the evidence provided did not demonstrate "sustained acclaim." *Id.* at 1121. But the Ninth Circuit held that the determination of whether the petitioner has achieved sustained acclaim is "not relevant to the antecedent procedural question of whether the plaintiff has satisfied the criterion." *Id.*; *see also Hristov v. Roark*, No. 09-CV-2731 (SLT), 2011 WL 471185, at *8 (E.D.N.Y. Sep. 30, 2011) (quoting *Kazarian*, 596 F.3d at 1121). In response, USCIS released a policy memorandum later that year clarifying a two-part

4

approach with updated guidance on evaluating the evidence for extraordinary ability visas (*see* ECF No. 1-9 at 2, 4).

II.      Factual Background

Saurabh Taneja ("Plaintiff" or "Taneja") is a citizen of India who applied for an employment-based extraordinary ability visa, or EB-1A I-140 ("I-140"). (ECF No. 1 ("Compl.") ¶ 25). He obtained a master's degree in civil and environmental engineering and a PhD in advanced infrastructure systems, both from Carnegie Mellon University. (ECF No. 1-5 at 2). At the time of filing his I-140 application, Taneja worked for Flieber Inc. ("Flieber") as a lead data scientist, focused on "Indoor Localization and Demand Sensing" and "seamless integration of data." (*Id*. ¶¶ 25–26).

On August 28, 2023, Taneja filed with USCIS for an I-140 visa. (*Id.* ¶ 27). He claimed to meet six of the criteria with the following evidence: (i) documentation of his "receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;" (iv) evidence of his "participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;" (v) evidence of his "original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;" (vi) evidence of his "authorship of scholarly articles in the field, in professional or major trade publications or other major media;" (viii) evidence that he "has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;" and (ix) evidence that he "has commanded a high salary or other significantly high remuneration for services, in relation to others in the field." (*Id.* ¶ 5). This documentation included records

5

of peer review Taneja conducted, his published work, reference letters, and salary information. (*See* ECF No. 1-4 at 4–9).

On September 5, 2023, USCIS issued a Request for Evidence ("RFE"), noting that Taneja provided sufficient evidence to meet two criteria: (iv) participation as a judge of the work of others in the same or an allied field of specification and (vi) authorship of scholarly articles in the field. (Compl. ¶ 5). USCIS explained that Plaintiff had failed to satisfy initial evidence criteria (i), (v), (viii), and (ix) and provided an opportunity to submit additional evidence. (*Id.;* ECF No. 1-6 at 4–10).

Based on his Nov. 20, 2023, response, USCIS found Taneja submitted enough evidence to demonstrate his leading or critical role at Flieber and meet his burden under 8 C.F.R. § 204.5(h)(3)(viii), but still did not satisfy criteria (i), (v), or (ix). (ECF No. 1-4 at 3–18). Because Taneja had satisfied three of the ten requirements under 8 C.F.R. § 204.5(h)(3), USCIS conducted the second step, reviewing all the submissions to determine if he demonstrated by a preponderance of the evidence "that he possesses the high level of expertise required." (*Id.* at 12)*.* USCIS denied Taneja's petition on November 29, 2023, because he had not demonstrated "sustained acclaim" or that he had "risen to the top of [his] field." (Compl. ¶¶ 6, 12).

Taneja then filed his prior suit requesting declaratory and injunctive relief. *See Taneja v. Miller*, 24-CV-00508 (DLI) (E.D.N.Y. Jan. 23, 2024). USCIS subsequently reopened his I-140 petition and issued a Notice of Intent to Deny ("NOID") which provided Taneja a second opportunity to submit additional proof of satisfaction of the relevant criteria. (*See* ECF No. 1-6 at 2). The NOID stated the evidence Taneja previously submitted did not demonstrate "that his publication record is consistent with being among

the small percentage at the top of the field," or that the "rate of citation to the petitioner's work is high relative to others in the field." (*Id.* at 11–12). The parties stipulated to dismissal without prejudice and the case was dismissed. (*See Taneja*, 24-CV-00508, Order dated 3/28/2026). On April 23, 2024, Taneja submitted his timely response to the NOID (*see* ECF No. 1-6 at 14), and on July 19, 2024, USCIS denied his I-140 petition for a second time (ECF No. 1-4 at 2). USCIS concluded that while "the record demonstrates that the petitioner is skilled and experienced in computing and machine learning," "has conducted original research in this field," and "provided critical services for his employer and their clients," it "does not demonstrate that the petitioner has enjoyed sustained national or international acclaim or has risen to the top of his field." (*Id.*)

III.    Procedural History

Plaintiff filed his complaint on August 13, 2024, alleging that Defendants violated the Administrative Procedure Act ("APA") and that the decision to deny his petition was arbitrary and capricious. (*See* Compl. ¶¶ 46–63). He seeks declaratory and injunctive relief, including judicial review of the EB-1A I-140 petition denial and an order "set[ting] aside defendant USCIS's *Kazarian* policy and 2-part test." (*Id.* ¶¶ 46–63).[2] On January 30, 2025, Defendants filed the certified administrative record ("CAR"). (*see* ECF Nos. 12–25). Plaintiff served his motion for summary judgment on March 6, 2025, which Defendants later filed as a courtesy (See ECF Nos. 26, 38, 39 ("Pl.'s Mem.")). On July 7, 2025, Defendants filed their fully briefed cross motion for summary judgment and

---

[2] At one point, Taneja refers to "plaintiff-wife's" EB-1A I-140 application (Compl. ¶ 63), which the Court assumed is a typographical error.

opposition to Plaintiff's motion. (ECF Nos. 33, 34 ("Defs.' Mem."), 35 ("Pl.'s Opp'n), 36 ("Defs.' Reply)).

## LEGAL STANDARD

I.    Summary Judgment

Where a party challenges a final agency action under the APA, and "'the entire case on review is a question of law,' summary judgment is appropriate."[3] *Kapoor v. U. S. Citizenship and Immigr. Servs.*, 763 F. Supp. 3d 247, 254 (2025) (citing *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012)). In this context, the traditional Rule 56 summary judgment standard does not apply. *Id.* (citing *Jafarov*, 2024 WL 69056, at *3). Instead, the "district judge sits as an appellate tribunal," deciding not whether there is a genuine dispute of material fact but, whether, as a matter of law, the agency action is consistent with the APA standard of review. *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 218 (E.D.N.Y. 2021); *Kapoor*, 763 F. Supp. 3d 247, 254 (2025) ("The question [of] whether an agency's decision is arbitrary and capricious is a legal issue amenable to summary disposition") (citation modified).

II.    Arbitrary and Capricious Review

A federal court may review an agency's final action. 5 U.S.C. § 704. The final action is unlawful only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations," or "unsupported by substantial evidence." *Id.* § 706(2)(A),(C),(E). If the agency "relied on

---

[3] Accordingly, the Court reviews Defendants' motion (ECF No. 33) as a motion for summary judgment, and not a motion to dismiss.

factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," then the decision is arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).

An agency has abused its discretion "when it fails to present a rational explanation for its decision or if the decision is devoid of any reasoning." *Noroozi*, 905 F. Supp. 2d at 541 (S.D.N.Y. 2012) (quoting *Sinistovic v. Holder*, 429 Fed. Appx. 37, 39 (2d Cir. 2011) (summary order)). The agency does not need to "provide written findings about every piece of evidence that it consider[s]." *Kakar v. U.S. Citizenship & Immigr. Servs.*, 29 F.4th 129, 132 (2d Cir. 2022) (citing *Dibble v. Fenimore*, 545 F.3d 208, 219 (2d Cir. 2008)). Therefore, a court can "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* (quotation marks and citation omitted). To be supported by substantial evidence, the agency's decision must have been based on "more than a mere scintilla" of evidence. *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 120 F.3d 341, 346 (2d Cir. 1997) (quotation marks and citation omitted). A court may reverse the agency only if it "find[s] that no reasonable fact finder could have come to USCIS's erroneous conclusion." *Cuckic v. Jaddou*, No. 21 Civ. 8395 (JPO), 2023 WL 2586031, at *4 (S.D.N.Y. Mar. 21, 2023).

**DISCUSSION**

Taneja challenges USCIS' two-step policy itself (Count I), how it was created (Count II), and its application to him (Count III).[4] The Court addressed each challenge in turn.

I.      USCIS' Final Merits Determination Comports with the Governing Statute

Taneja argues that 8 U.S.C. § 1153(b)(1)(A) does not allow for the application of the agency's final merits determination because Congress only delegated authority to define "sustained national or international acclaim," "achievements . . . recognized in the field," and "extensive documentation," *i.e.*, only phrases that explain *how* the petitioner can demonstrate their extraordinary ability, but not the term "extraordinary ability" itself. (Pl.'s Mem. at 23–25). Without such authority, his argument goes, USCIS cannot require that the petitioning noncitizen be "one of that small percentage who has risen to the very top of the field of endeavor" because the language for this "substantive standard" comes from legislative history, rather than the statute itself. (*See id.* at 25–27) (quoting 8 C.F.R. § 204.5(h)(2)). Defendants argue that the statute's introductory sentence "requires USCIS to determine whether a particular applicant has 'extraordinary ability' in his field," and the statutory requirement that "petitioner's extraordinary ability must be 'demonstrated by sustained national or international acclaim'" authorizes USCIS to make a finding of "long-term acclaim." (Defs.' Mem. at 24). The Court agrees.

---

[4] Taneja erroneously labels his third cause of action as "Count IV". (Compl. at 17). The Court names this cause of action as "Count III."

10

"Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority" and "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024). Therefore, to determine whether an agency exceeded the bounds of its statutory authority, the Court must use the "traditional tools of statutory construction" to determine the extent of power Congress delegated to USCIS through 8 U.S.C. § 1153(b)(1)(A). *See Id.* at 401 (2024) (imploring courts to use these tools *especially* for questions about the scope of an agency's power).

Accordingly, the Court begins with the plain text of the statute. *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 285 (2018) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.") (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)); *accord. Bloomberg L.P. v. U.S. Postal Serv.*, 118 F.4th 307, 317 (2d Cir. 2024) ("When a statute does not define a specific term, we look to its ordinary meaning found in contemporary dictionary definitions.") (citation modified).

In 1989, one year before Congress passed the relevant law, the Oxford English Dictionary defined "extraordinary" in various ways including "[o]ut of the usual or regular course or order; often in expressed opposition to *ordinary*," and "[o]f a kind not usually met with; exceptional; unusual; singular." *Extraordinary* (def. 1, 3), *Oxford English Dictionary* (2d ed. 1989); *accord Extraordinary* (def. 1a, 1b)*, Webster's Ninth New Collegiate Dictionary* (9th ed. 1983) ("[G]oing beyond what is usual, regular, or customary" and "exceptional to a very marked extent."); *Extraordinary, Black's Law Dictionary* (5th ed. 1979; 6th ed. 1990) ("Out of the ordinary; exceeding the usual, average, or normal

measure or degree; beyond or out of the common order, method, or rule; not usual, regular, or of a customary kind; remarkable; uncommon; rare; employed for an exceptional purpose or on a special occasion."). The same Oxford English Dictionary had multiple entries for the definition of "ability," including "faculty, capacity (*to do* or *of doing* something)" and "[m]ental power or capacity; talent, cleverness." *Ability*, (def. 2, 5), *Oxford English Dictionary* (2d ed. 1989); *accord Ability*, *Webster's Ninth New Collegiate Dictionary* (9th ed. 1983) ("[C]apacity, fitness, or tendency to act or be acted on in a (specified) way."); *Ability, Black's Law Dictionary* (5th ed. 1979; 6th ed.1990) ("Capacity to perform an act or service."). Although all three dictionaries include a definition of "extraordinary" as something unusual or out of the ordinary, the Oxford English Dictionary notes that definition is often used opposite "ordinary," which is not used in 8 U.S.C. § 1153(b)(1)(A), rendering those definitions less applicable. An individual who has an "extraordinary ability," then, is one who has the capacity or talent to do something exceptional, unusual, or rare.

This understanding is bolstered by the term's statutory context. Section 1153 creates a secondary visa category for noncitizens of "*exceptional* ability"—also not defined, but requiring fewer qualifications. *See* 8 U.S.C. § 1153(b)(2) (emphasis added); *see also Kazarian*, 596 F.3d at 1120 ("To qualify for the 'exceptional ability' visa, a petitioner must make a lesser showing of ability . . ."). It would be illogical for Congress to create two visa categories with distinct standards but intend them to be equally exclusive, or that the category with the "lesser showing of ability" would be reserved for those with

more impressive accolades than the category requiring a higher showing of ability.[5] "Extraordinary ability" is necessarily more rigorous than "exceptional ability," and USCIS' definition accords with "the best meaning" of the statute. *See Loper Bright Enters.* at 400 (requiring courts "to determine the best reading of the statute" because "statutes . . . do—in fact, must—have a single, best meaning.").

Unfortunately for Taneja, he provides no binding case to support his understanding of the grant of power to the agency.[6] As defendants note, Congress granted the Secretary of Homeland Security the power to "establish such regulations . . . and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter." 8 U.S.C. § 1103(a)(3). It does not follow that with no explicit restriction in 8 U.S.C. § 1153(b)(1)(A), the power granted by 8 U.S.C. § 1103(a)(3) would not allow USCIS to "'fill up the details' of [this] statutory scheme" and define an essential term. *Loper Bright Enters.*, 603 U.S. at 395.

Therefore, the Court grants summary judgment for Defendants on Count I.

---

[5] This conclusion also emerges by comparing the text of the statute that creates each visa. *Compare* 8 U.S.C. § 1153(b)(1)(A) (requiring the petitioner demonstrate their applicability in category through "sustained national or international acclaim" and who has "extensive documentation" of the recognition they have received in their field), *with* 8 U.S.C. § 1153(b)(2)(A) (requiring the petitioner demonstrate that they hold an advanced degree and will substantially benefit the United States because of their "exceptional ability").

[6] Taneja's motion papers provide no cases at all to support this proposition. On January 28, 2026, he notified the Court of *Mukherji v. Miller*, 24-CIV-3170 (JFB), 2026 WL 895708 (D. Neb. Jan. 28, 2026), litigated by his same counsel, which did not explicitly analyze the statute at issue, but found that the final merits determination violated notice and comment rulemaking. (*See* ECF No. 41). A prior non-binding case, also litigated by same counsel, found the opposite, upholding the policy on both statutory and rulemaking grounds. *See Nagaiah v. Allen*, 784 F. Supp. 3d 798, 813 (E.D. Pa. 2025).

II.        <u>USCIS' Final Merits Determination Comports with Agency Regulations</u>

Taneja argues that even if section 1153(b)(1)(A) allows USCIS to define "extraordinary ability," and its definition is proper, the agency's "binding regulations do not allow for the application of the agency's 'final merits determination' test". (Pl.'s Mem. at 17). He contends that 8 C.F.R. § 204.5(h) clearly and unambiguously requires nothing more of an applicant than meeting the listed criteria. (*Id.* at 22). Even if the regulation were ambiguous, he maintains the final merits test either doesn't fall within the "outer bounds of permissible interpretation" or does not reflect "fair and considered judgment." (*Id.* at 22–23). Defendant argues that the final merits determination survives Taneja's arguments (Defs.' Mem. at 6), and the Court agrees.

If an agency regulation is unambiguous, it "just means what it means—and the court must give it effect, as the court would any law." *Kisor v. Wilkie*, 588 U.S. 558, 574–75 (2019). To determine if there is ambiguity, a court considers "the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on." *Id.* at 575 (citation omitted). If it is ambiguous, a court accords some deference to the agency's interpretation, but "the agency's reading must still be 'reasonable.'"[7] *Id.* (citation omitted).

Here, the text of 8 C.F.R. § 204.5(h) is not ambiguous. After defining "extraordinary ability," it instructs applicants on the "initial evidence" that must accompany their petition

---

[7] Plaintiff dedicates considerable currency arguing that the regulation is ambiguous and therefore requires *Kisor*'s extensive determination on whether *Auer* deference applies. (*See* Pl.'s Mem. at 18–23). As the Court independently finds USCIS' two-step process consistent with both the relevant statute and unambiguous regulation, it does not engage in such analysis.

and explains that "such evidence" shall include a "a one-time achievement" or at least three of ten possible criteria. 8 C.F.R. § 204.5(h)(3). Taneja argues the use of "such" sets out an evidentiary requirement and therefore constitutes "a complete rule setting a complete standard." (*See* Pl.'s Mem. at 21). That interpretation not only contravenes the plain meaning of the regulatory language but also belies the logic of a highly selective visa process in the first place.  As other courts have reasoned, the plain meaning of "initial" precludes a presumption of approval by an applicant simply *providing* such evidence they believes to fit the criteria; proffering the "initial evidence" is "necessary but not sufficient". *See, e.g.*, *Nagaiah v. Allen,* 784 F. Supp. 3d 798, 814 (E.D. Pa. 2025); *Jafarov*, 2024 WL 69056, at *9 (citing *Amin v. Mayorkas*, 24 F.4th 383, 395 (5th Cir. 2022) ("If the three criteria . . . are enough to automatically show [sustained national or international] acclaim, then the 'extraordinary ability' visa will look less like an Einstein visa and more like a Lake Wobegon one.")). Instead, applicants provide at least three criteria from a possible ten, and USCIS then evaluates the entirety of the submissions against its definition of "extraordinary ability:" an evaluation akin to any highly selective admission process, where simply submitting the required documents could not possibly *guarantee* admission. *Amin*, 24 F.4th at 391 ("As most college applicants learn, submitting all the required application materials does not guarantee a favorable decision.").

Further, the regulation's inclusion of possible "comparable evidence" if the ten criteria "do not readily apply to the beneficiary's occupation," 8 C.F.R. § 204.5(h)(4), does not "lead[] to the negative inference that the regulation has no other requirements regarding the type of proof that a noncitizen must submit to demonstrate their possession of extraordinary ability" as Taneja submits (Pl.'s Mem. at 21–22). It simply demonstrates

15

USCIS' awareness that the list of criteria is non-exhaustive. If an applicant submits "comparable evidence," wouldn't USIS need to evaluate it? Offering the option of "comparable evidence" merely contemplates an agency officer's overall evaluation.[8]

III.    USCIS' Final Merits Determination Did Not Require
        Notice and Comment Rulemaking

Taneja argues that USCIS' explicit adoption of the two-step process constitutes a legislative rule that did not undergo required notice-and-comment rulemaking and is therefore invalid. (Pl.'s Mem. at 28). He relies on a 2010 USCIS policy memorandum, and both a withdrawn 1995 Notice of Proposed Rulemaking ("NPRM") and 2011 external Ombudsman's report that labeled the proposed final merits determination as a substantive rule. (*Id.*) Defendants submit that, consistent with caselaw across several circuits, the policy is an interpretive rule where notice-and-comment rulemaking is unnecessary. (Def.'s Mem. at 30). Defendants are correct.

The requirements of notice-and-comment rulemaking only apply to legislative rules, and not to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553; *see also Lincoln v. Vigil*, 508 U.S. 182, 196 (1993); *Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137, 168 (2d Cir. 2013). A legislative rule "create[s] new law, rights, or duties, in what amounts to a legislative act." *Sweet v. Sheahan*, 235 F.3d 80, 91 (2d Cir. 2000) (citing *White v. Shalala*, 7 F.3d 296, 303 (2d Cir.1993)). Interpretive rules do not create new rights, but "clarify an existing

---

[8] Taneja also argues that the regulatory history renders the regulation unlawful, referencing various agency documents, noted *infra* section III. (Pl.'s Mem. at 28). After considering the text, structure, and purpose of the regulation, a review of those documents does not change the Court's analysis, and they are nevertheless non-binding on the agency.

statute or regulation." *White*, 7 F.3d at 303; *see also Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) ("[T]he critical feature of interpretive rules is that they are 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'") (citation omitted). Rather than look to the agency's own classification of a rule, courts assess "what the agency does in fact." *Lewis-Mota v. Sec'y of Lab.*, 469 F.2d 478, 482 (2d Cir. 1972). The Second Circuit endorsed the factor analysis laid out in *American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106, 1112 (D.C.Cir.1993)), for differentiating legislative or interpretive rules:

> "(1) whether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties, (2) whether the agency has published the rule in the Code of Federal Regulations, (3) whether the agency has explicitly invoked its general legislative authority, or (4) whether the rule effectively amends a prior legislative rule. If the answer to any of these questions is affirmative, we have a legislative, not an interpretive rule."

*Williams v. Smith*, No. 22-CV-1630 (SVN), 2024 WL 3292725, at *16 (D. Conn. July 3, 2024) (citing *Sweet*, 235 F.3d at 91), *aff'd*, No. 24-2733, 2026 WL 1045419 (2d Cir. Apr. 17, 2026).

Just as the Court may not take the agency's classification of a rule at face value, neither must it accept Taneja's unsupported conclusions. Although he quotes non-binding authorities to describe the 2010 policy memorandum (Pl.'s Mem. at 27–28), this amounts to a circular "because I said so" argument. Taneja does not offer analysis as to why the memorandum satisfies any of the characterizations the Court must consider—perhaps because none of them would identify the two-step process as a legislative rule. *See Williams*, 2024 WL 3292725, at *16. As outlined above, the regulation already contemplates a final merits determination, or totality of the circumstances assessment.

17

The documents on which Taneja relies only counter his argument: at best they confirm that proffering evidence to meet the regulation's criteria does not alone confirm eligibility for the extraordinary-ability visa, nor did it before USCIS issued the memorandum. (*See* ECF No. 1-9 at 4) (explaining that USCIS agreed with the *Kazarian* Court that the overall evaluation of the evidence should happen as a second step, rather than concurrent with a determination of what evidence an applicant has submitted).   The Court aligns with other district and circuit courts in determining that the final merits determination is not a legislative rule and the memorandum did not "create new . . . duties." *Sweet*, 235 F.3d at 91. It solely "clarif[ied] an existing statute or regulation," *White*, 7 F.3d at 303, by specifying when the final determination step would happen (*see* ECF No. 1-9 at 4–5), thereby "advis[ing] the public" of its method of "administering" the relevant statue and regulation, *Perez*, 575 U.S. at 97. [9] Contrary to Taneja demands (Pl.'s Mem. at 16), USCIS was not required to "provide a reasoned explanation for a change," "display an awareness of a change," or "show good reasons for a change" because there was no policy change. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).

Accordingly, the Court grants summary judgment to Defendnats on Count II.

---

[9] As Defendants note, numerous courts across several circuits have similarly determined the final merits determination and 2010 policy memorandum as indicative of an interpretive rule. (Defs.' Mem. at 30; Reply at 13–14) (citing *Nagaiah*, 784 F. Supp. 3d at 817 n.7 (E.D. Pa. 2025) (collecting cases)).

IV.    <u>USCIS' Denial of Plaintiff's Application was not Arbitrary and Capricious</u>

Taneja contends that USCIS "improperly rejected evidence of his qualification under 8 C.F.R. §204.5(h)(3)." (Pl.'s Mem. at 7). This argument rests primarily on his arguments that the final merits determination itself is invalid. His papers otherwise do not argue why his *individual* denial was arbitrary and capricious, except for a brief statement that "USCIS made critical errors in its review of the evidence that the plaintiff submitted in support of his claims under § 204.5(h)(3)(v) and (ix)." (*Id.* at 15). As the Court determines USCIS' process to comport with its statutory and regulatory basis, there is little left for the Court to address on this Count.

In identifying USCIS' purported errors, Taneja offers as one example its assessment of his salary that "was $16,000 higher than the 90th percentile for Data Scientists nationwide," "$27,000 higher than the U.S. Department of Labor's Wage Level 4 for the New York metropolitan statistical area," and "'nearly double' the salary" for lower-level data scientists at his employer. (*Id.*) But Taneja cannot reasonably argue that salary data alone would be dispositive for a favorable adjudication of his application. As explained above, submitting any of the required criteria under 8 C.F.R. § 204.5(h)(3) does not guarantee approval. *See Jafarov*, 2024 WL 69056, at *9 (S.D.N.Y. Jan. 5, 2024) (determining as reasonable USCIS' evaluation of similar salary data as impressive but not placing the applicant at the very top of his field). "To hold otherwise would appear to require USCIS to find that all employees—absent other disqualifying characteristics—in the 90th percentile of their given field have reached that field's pinnacle." *Id.* Such a requirement would render the extraordinary visa categorically less exclusive than the statue and regulation describe.

The Court does not doubt Taneja's professional accomplishments, but it has no reason to determine that USCIS' denial of his extraordinary visa application was arbitrary and capricious. Therefore, the Court grants summary judgment for Defendants on Count III.

## **CONCLUSION**

For the reasons set forth above, the Court grants Defendants' motion for summary judgment (ECF No. 33) and denies Plaintiff's motion for summary judgment (ECF No. 38).

The Clerk of Court is respectfully directed to enter judgment for Defendants and close the case.

SO ORDERED.

/s/ Ramón E. Reyes, Jr.

RAMÓN E. REYES, JR.
United States District Judge

Dated: June 16, 2026
         Brooklyn, New York

20